**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
BY:  Mark J. Leavy, Esquire          **ATTORNEY FOR DEFENDANT**
**Attorney ID:  014312004**          **Cal-Tex Protective Coatings, Inc.**
**535 Route 38 East**
**Suite 501**
**Cherry Hill, NJ  08002**
**(856) 663-4300**

0447-113490(MJL/SSN)

| | |
|---|---|
| Carol Lassiter-Williams, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Cal-Tex Protective Coatings, Inc., and John Does 1-10,<br><br>Defendants. | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>**CIVIL ACTION NO.**<br><br>**NOTICE OF REMOVAL** |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(d), 1446, and 1453, defendants, Cal-Tex Protective Coatings, Inc., by and through its undersigned counsel, hereby removes a state court action commenced by plaintiff, Carol Lassiter-Williams, on behalf of herself and all other similarly situated (collectively as the "Plaintiffs") to the United States District Court for the District of New Jersey, and in support thereof state the following:

## I.    PROCEDURAL HISTORY

1.    On June 12, 2023, Plaintiffs commenced a civil action in the Superior Court of New Jersey, Essex County, Law Division, Docket No. ESX-L-3727-23, by filing a complaint entitled "Class Action Complaint and Jury Demand" (hereinafter the "Class Action Complaint"). (A true and correct copy of the Class Action Complaint is attached as Exhibit A).

2.      On June 23, 2023, General Counsel for the Defendant, Cal-Tex Coatings, Inc. (hereinafter, "Cal-Tex"), Daniel McDonald, Esquire, accepted service of the Class Action Complaint. (A true and accurate copy of the Acknowledgement of Service dated June 23, 2023, is attached as Exhibit B).

3.      Defendant, Cal-Tex, now timely files this Notice of Removal within thirty (30) days of service of the Class Action Complaint and consistent with the provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) & 1453.

4.      Consistent with the procedures governing the removal of a "class action," as that term is defined under 28 U.S.C. § 1332(d)(1), the Notice of Removal is filed solely by Cal-Tex, inasmuch as there are no other named defendants whose consent would be required for removal thereunder. *See* 28 U.S.C. §§ 1446(b)(1), 1453(a) & (b).

5.      As set forth below, the underlying jurisdictional basis for Cal-Tex's removal of the Class Action Complaint, as set forth within 28 U.S.C. § 1332(d)(2), is satisfied and meets the requirements for removal in connection with the Class Action Complaint.

## II.    THE PARTIES

6.      The named Plaintiff in this Class Action Complaint, Carol Lassiter-Williams, is a resident and citizen of the State of New Jersey. (*See* Class Action Complaint, Exhibit A, at ¶ 3).

7.      Defendant, Cal-Tex conducts business in New Jersey.  Cal-Tex is a Texas corporation that maintains its primary business address at 7455 Natural Bridge Caverns Road, Schertz, Texas, 78154.  Cal-Tex is wholly owned by Spectrum Automotive Holdings Corp., a Delaware corporation. (*See* Class Action Complaint, Exhibit A, at ¶ 4).  See also Cal-Tex's Rule 7.1 disclosure attached hereto as Exhibit C.

8.    The Class Action Complaint asserts that it is brought as a class action under New Jersey State Court Rule 4:32 on behalf of Plaintiff, herself, and the putative members of the Class and Sub-Class, the latter of which the plaintiff defines as all members of the Class who attempted to cancel the contract and were denied a full refund of the amount the selling dealer charged for the contract or were discouraged from seeking a refund provision making the contract non-cancellable. (*See* Class Action Complaint, Exhibit A, at ¶ 63).

9.    The Class Action Complaint contains various allegations ostensibly in support of the requisite elements necessary to justify certification of the lawsuit by the court as a class action, e.g., numerosity, typicality, and predominating and common questions of law and fact. (*See* Class Action Complaint, Exhibit A, at ¶¶ 63-80).

III.    **THE ALLEGATIONS AND CLAIMS IN THE CLASS ACTION COMPLAINT**

10.    The following numbered paragraphs summarize the allegations contained in the Class Action Complaint relevant to this Notice of Removal.

A.    **General Allegations Regarding Cal-Tex Protective Coatings, Inc.**

11.    Plaintiff and others similarly situated are identified as "natural persons who purchased their vehicles for personal, family, or household purposes." (*See* Class Action Complaint, Exhibit A, at ¶ 14).

12.    Plaintiffs allege that at all relevant times, Cal-Tex, was licensed by the State of New Jersey to sell services contracts in the State. (*See* Class Action Complaint, Exhibit A, at ¶ 7).

13.    Plaintiffs allege that at all times relevant, Cal-Tex sold or offered to sell motor vehicle service contracts in the State of New Jersey through its network of motor vehicle dealers located in New Jersey. (*See* Class Action Complaint, Exhibit A, at ¶ 11).

14.     Plaintiffs allege that at all times relevant, Cal-Tex sold motor vehicle service contracts through 36 Water Street Auto, LLC, d/b/a Hudson Kia (hereinafter, "Hudson Kia"). (*See* Class Action Complaint, Exhibit A, at ¶ 12).

15.     Plaintiffs allege that on July 1, 2017, the Plaintiff purchased a used 2014 Kia Sorento SX, VIN 5XYKW4A77EG471512, (hereinafter, the "Sorento") from Hudson Kia. (*See* Class Action Complaint, Exhibit A, at ¶ 13).

16.     Plaintiffs allege that at the time of the purchase of the Sorento, the Plaintiff also purchased a ResistAll NG2 Contract (hereinafter, ResistAll) for $3,105.00, which Cal-Tex sold through Hudson Kia. (*See* Class Action Complaint, Exhibit A, at ¶ 15).

17.     Plaintiffs allege that the ResistAll contract allows Cal-Tex to "reserve the right to reject this Registration without obligation to any party if the proper [registration fees] are not submitted to Cal-Tex by the Dealer within sixty (60) days of the date of the application of the product to Your Vehicle." (*See* Class Action Complaint, Exhibit A, at ¶ 16).

18.     Plaintiffs allege that Hudson Kia timely remitted the "proper fees" to Cal-Tex and that Cal-Tex did not reject the ResistAll contract and the coverage promised under the contract became active. (*See* Class Action Complaint, Exhibit A, at ¶ ¶ 17-18).

19.     Plaintiffs allege that Cal-Tex sells other coverages besides the ResistAll contract through its New Jersey dealer network that satisfy the definition of a "Service Contract" and/or a "motor Vehicle Ancillary Protection Product" as defined by the CSCA at <u>N.J.S.A.</u> 56:12-87. (*See* Class Action Complaint, Exhibit A, at ¶ 19).

20.     Plaintiffs allege that the sellers of the ResistAll contracts and/or other Cal-Tex Service Contracts to others similarly situated remitted the "proper fees" to Cal-Tex and that it did not reject the ResistAll contracts and/or other Cal-Tex Service Contracts of others similarly

situated, and the coverages promised under their contracts became active. (*See* Class Action Complaint, Exhibit A, at ¶ ¶ 20-21).

21.    Plaintiffs allege that the ResistAll contracts and/or other Cal-Tex Service Contracts are form contracts that the Defendant used in their transactions with the Plaintiff and others similarly situated. (*See* Class Action Complaint, Exhibit A, at ¶ 22).

22.    Plaintiffs allege that the ResistAll contracts and/or the other Cal-Tex Service Contracts provide for one or more of the following with respect to a motor vehicle: the repair or replacement of tires or wheels on a motor vehicle that was damaged, the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal, and the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired. (*See* Class Action Complaint, Exhibit A, at ¶ 24(1), (2), and (3)).

23.    Plaintiffs allege that Cal-Tex did not reject the ResistAll contracts and/or the other Cal-Text Service Contracts, and that the coverages promised under these contracts for the Plaintiff and others similarly situated became active. (*See* Class Action Complaint, Exhibit A, at ¶ 25-26).

24.    Plaintiffs allege that Plaintiff and others similarly situated purchased their Resistall contracts and Cal-Tex Service Contracts to provide protections for the vehicles they purchased and that the vehicles purchased by the Plaintiff and others similarly situated exceed $250.00. (*See* Class Action Complaint, Exhibit A, at ¶¶ 27-28).

25.    Plaintiffs allege that the motor vehicle dealers and other sellers in New Jersey who sold the ResistAll contracts and/or other Cal-Tex Service contracts to others similarly situated submitted the correct registration fees to Cal-Tex within 60 days of the registration dates set forth in their contracts. (*See* Class Action Complaint, Exhibit A, at ¶ 29).

26.    Plaintiffs allege that the ResistAll contract and other contracts that the Defendant used in its transactions with the Plaintiff and others similarly situated are described as "limited warranties," but are in fact "service contracts" because they are contracts obligating a third-party to perform services at an additional cost for the motor vehicles sold or leased. (*See* Class Action Complaint, Exhibit A, at ¶ 47).

27.    Plaintiff alleges that when she got home with the Sorento, Plaintiff discovered that she paid $3,105.00 for the ResistAll contract, far more than she was willing to pay or believed she was being charged. (*See* Class Action Complaint, Exhibit A, at ¶ 48).

28.    Plaintiff alleges that she returned to Hudson Kia on July 2, 2017, seeking to cancel the ResistAll contract but was informed that the ResistAll contract was not cancelable, and that Hudson Kia refused to cancel the contract. (*See* Class Action Complaint, Exhibit A, at ¶¶ 49-50).

29.    Plaintiff alleges that on July 2, 2017, she called Cal-Tex directly requesting to cancel the ResistAll contract for a refund but was informed by Cal-Tex representatives that the Resist-All contract was not cancelable, and that Cal-Tex would not cancel and refund the Plaintiff's purchase price. (*See* Class Action Complaint, Exhibit A, at ¶ 51-52).

30.    Plaintiff alleges that Cal-Tex routinely refuses to refund the purchase prices paid by others similarly situated to Plaintiff who attempt to cancel their ResistAll contracts and/or other Cal-Tex Service Contracts for a refund. (*See* Class Action Complaint, Exhibit A, at ¶ 53).

31.    Plaintiffs allege that they wanted to cancel their ResistAll contracts and/or other Cal-Tex Service Contracts and receive refunds of the purchase price but were deterred by the contract's cancellation provision that made the contract "non-cancelable." (*See* Class Action Complaint, Exhibit A, at ¶ 56).

32.    Plaintiff alleges that had Cal-Tex disclosed the cancellation provisions required by the CSCA, Plaintiff and others similarly situated would have discovered that they had the right to cancel their contracts and obtain a refund of the purchase price, and Plaintiff and others similarly situated would have been able to make an informed decision about whether they wished to cancel or would have canceled their contracts under the CSCA's provisions. (*See* Class Action Complaint, Exhibit A, at ¶ ¶ 57-60).

33.    Plaintiffs allege that Cal-Tex is the only person or entity who is contractually obligated to the service contract holder under the terms of the ResistAll contract and/or other Cal-Tex Service Contracts sold to the Plaintiff and others similarly situated and that Plaintiff and others similarly situated are the service contract holders for the ResistAll contract sold to them. (*See* Class Action Complaint, Exhibit A, at ¶ ¶ 61-62).

**B.    Class Action Allegations and Claims Asserted**

34.    The Class Action Complaint identifies one putative class and one putative sub-class, and asserts various allegations respecting the purported propriety of the action proceeding as a class action, consistent with New Jersey Court Rule 4:32, and respecting issues such as numerosity, impracticability of joinder of all potential plaintiffs, common questions of law and fact, typicality, identifiability, and risk of inconsistent adjudications, etc. (*See* Class Action Complaint, Exhibit A, at ¶ ¶ 63-80).

35.    The Class Action Complaint alleges Defendant's sale of motor vehicle coverages and protection products and services to the Plaintiff and others similarly situated are transactions subject the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1, *et. seq*. (*See* Class Action Complaint, Exhibit A, at ¶ 81-85).

36.     The Class Action Complaint alleges that the ResistAll contract and/or other Cal-Tex Service Contracts entered into by the Plaintiff and others similarly situated are Service Contracts as defined by the Consumer Service Contract Act ("CSCA"), under <u>N.J.S.A.</u> 56:12-87 to -96, and that pursuant to N.J.S.A. 56:12-96(a), a violation of the CSCA shall be an unlawful practice and is a *per se* violation of the CFA, and that the ResistAll contract and/or other Cal-Tex Service Contracts sold to the Plaintiff and others similarly situated violate the CSCA because the contracts are disclosed as "non-cancelable" and do not allow for the statutory minimum refund periods set forth in N.J.S.A. 56:12-93(k). (*See* Class Action Complaint, Exhibit A, at ¶¶ 86-96).

37.     The Class Action Complaint alleges that the Plaintiff and others similarly situated who purchased ResistAll contracts and/or other Cal-Tex Service Contracts suffered ascertainable losses as a result of Defendant's unlawful provision stating that the contracts were "non-cancelable," and that they have an extended right to cancel their contracts for a refund because of Defendant's unlawful "non-cancelable" provision. (*See* Class Action Complaint, Exhibit A, at ¶¶ 97-99).

38.     The Class Action Complaint alleges that the ResistAll contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated contained a provision stating: "CALTEX SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES," and that Defendant's exclusion or limitation of "incidental, punitive or consequential damages is unconscionable and unenforceable, violates New Jersey public policy because it would prohibit these damages resulting from Defendant's intentional or reckless conduct, violates the CFA because the exclusion and/or limitation is against New Jersey public policy and contradicts the CFA's treble damages provision at <u>N.J.S.A.</u> 56:8-19. (*See* Class Action Complaint, Exhibit A, at ¶¶ 100-107).

39.    The Class Action Complaint alleges that the Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), at N.J.S.A. 56:12-14 to -18 regulates the content of consumer contracts, warranties, notices, and sign, that the ResistAll contracts and/or other Cal-Tex Service Contracts that Defendant entered into with the Plaintiff and others similarly situated are "consumer contracts" or "consumer notices" with respect to TCCWNA, and since Defendant gave or displayed written contracts or consumer notices to the Plaintiff and others similarly situated which included a provisions contrary to the statutorily required minimum cancellation periods at N.J.S.A. 56:12-93(k), Defendant violated TCCWNA. (*See* Class Action Complaint, Exhibit A, at ¶¶ 119-128).

40.    The Class Action Complaint alleges that by offering and/or displaying and/or entering into a contract with Plaintiff and others similarly situated that contained provisions limiting Defendant's liability for incidental, consequential, or punitive damages that is contrary to the treble damages provision of the CFA at N.J.S.A. 56:8-19, Defendant violated TCCWNA. (*See* Class Action Complaint, Exhibit A, at ¶ 129).

41.    The Class Action Complaint alleges that by offering and/or displaying and/or entering into a contract with Plaintiff and others similarly situated that contained provisions excluding or limiting Defendant's liability without stating whether the exclusions or limitation of the ResistAll contracts and/or other Cal-Tex Service Contracts were valid, Defendant violated TCCWNA and Plaintiff and others similarly situated are entitled to statutory damages of not less than $100.00 for each contract or notice in violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17. (*See* Class Action Complaint, Exhibit A, at ¶¶ 134-139).

42.     The Class Action Complaint alleges that as a result of Defendant's violations of the CSCA and the CFA, Plaintiff and others similarly situated suffered an ascertainable loss equal to the purchase prices they paid for their ResistAll contracts and/or other Cal-Tex Service Contracts and any finance charges incurred to finance the cost of their contracts, and that Plaintiff's ascertainable losses include (a) $3,105.00, the cost of her ResistAll contract; and (b) the interest incurred on the $3,105.00 price of the ResistAll contract after Plaintiff attempted to cancel her contract on July 2, 2017. (*See* Class Action Complaint, Exhibit A, at ¶¶ 147-151).

43.     The Class Action Complaint alleges that Plaintiff and others similarly situated are entitled to statutory damages of not less than $100.00 for each contract or notice in violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17. (*See* Class Action Complaint, Exhibit A, at ¶¶ 152-154).

44.     The Class Action Complaint demands judgement against the Defendants as follows:

(a) Declaratory judgment that Defendant's form ResistAll Contracts and/or other Cal-Tex Service Contracts do not comply with the CSCA, the CFA, and/or the TCCWNA;

(b) Declaratory judgment that Defendant violated the CSCA, the CFA, and the TCCWNA with respect to the sale of ResistAll Contracts and/or other Cal-Tex Service Contracts and other contracts sold in New Jersey;

(c) Injunctive relief prohibiting Defendant from future violations of the CSCA, the CFA, and the TCCWNA;

(d) An order certifying this matter as a class action pursuant to Rule 4:31-1(b)(2) as to the Class;

(e) An order certifying this matter as a class action pursuant to Rule 4:32-1(b)(3) as to the sub-class;

(f) An injunctive remedy requiring Defendants to provide notice to all members of the Class of the liability findings as to Plaintiff and providing an extended right for the class members to cancel their contracts;

(g) An injunctive remedy, requiring Defendants to provide notice to all members of the Class of the liability findings as to Plaintiff and informing them that their ResistAll Contracts and/or other Cal-Tex Service Contracts and other contracts are voidable

and that they may bring a separate action to request that the Court void their contracts and for Defendant to provide a refund pursuant to the CFA and/or the last sentence of TCCWNA at N.J.S.A. 56:12-17;

(h) Actual damages as to the Sub-Class;

(i) Treble damages, pursuant to the CFA at <u>N.J.S.A.</u> 56:8-19, as to the Sub-Class;

(j) Maximum statutory damages under the Truth-In-Consumer Contract, Warranty, and Notice Act, pursuant to <u>N.J.S.A.</u> 56:12-17, as to the Sub-Class;

(k) Reasonable attorneys' fees and costs under the Consumer Fraud Act at N.J.S.A. 56:8-19, the TCCWNA at <u>N.J.S.A.</u> 56:12-17, and all other applicable statutes;

(l) Pre-judgment and post-judgment interest;

(m) For such other and further relief as Plaintiff and others similarly situated may be entitled or as the Court deems equitable and just.

(*See* Class Action Complaint, Exhibit A, at ¶ WHEREFORE, after ¶ 154).

## IV.   <u>REMOVAL IS PROPER ON THE BASIS OF DIVERSITY JURISDICTION UNDER CAFA</u>

45.    The claims raised in the Class Action Complaint are removable from the Superior Court of New Jersey, Essex County, to this Court.

46.    Removal is specifically permitted in this matter, and federal court jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

47.    Under CAFA, diversity jurisdiction exists in a "class action," as that term is specifically defined under 28 U.S.C. § 1332(d)(1)(B), where the matter in controversy exceeds the sum of $5,000,000 and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

48.    The Class Action Complaint meets the definition of a "class action" under CAFA, 28 U.S.C. § 1332(d)(1)(B), because it was filed pursuant to New Jersey Court Rule 4:32, which is a state rule of judicial procedure similar to Federal Rule of Civil Procedure 23 that authorizes an action to be brought by one or more representative persons as a class action, and contains allegations directed at meeting the requirements for certification of a class action.

49. "Minimal" diversity jurisdiction exists under CAFA because Plaintiffs are all citizens of the State of New Jersey and "at least one defendant," Cal-Tex Protective Coatings, Inc., is a citizen of another State, Texas, and its parent corporation, Spectrum Automotive Holdings Corp., is a citizen of Delaware. (*See* ¶ 7 hereinabove).

50. The Class Action Complaint, which itself does not set forth the total dollar amount of damages that are being claimed.

51. According to a reasonable reading of the Class Action Complaint, the amount in controversy exceeds $5,000,000 in the aggregate.

52. Specifically, based on the allegations in the Class Action Complaint, every member of the putative class would be entitled to recover:

    a. $100 per class member in statutory damages for TCCWNA violations (*see* ¶¶ 42 and 45above)

    b. treble damages of the $250 minimum amount of the alleged Cal-Tex contracts at issue, or $750 per class member (*see* ¶¶ 25 and 45 above); and,

    c. attorneys' fees and costs, pre- and post-judgment interest.

53. Based on the above two categories, if there were approximately 5,883 class members, this would exceed $5,000,000 in damages, exclusive of attorneys' fees, costs, and interest, according to the allegations in the Class Action Complaint.

54. The putative class would include all natural persons who are residents of New Jersey on the date that Plaintiff filed this Class Action Complaint, and/or other natural persons who entered into a contract or agreement incident to the purchase or lease of a motor vehicle for personal, family, or household purposes, from a licensed motor vehicle dealer located in New Jersey at any time on or after the date six (6) years prior to the date this Class Action Complaint was filed under which Cal-Tex was contractually obligated to the contract holder that was the same as or similar to the contract used in Plaintiff's transaction.

55.     Based on the allegations in the Class Action Complaint, an as set forth the Affidavit of Cal-Tex's General Counsel, Danny McDonald attached hereto as Exhibit D, there were <u>at least</u> 15,000 individuals entering into the type of contracts alleged in this matter during the above time period in paragraph 55, which would yield at least $12,750,000 in potential damages in this matter; and, as such, the amount in controversy exceeds $5,000,000 in damages.

68.     This Notice is signed and submitted by counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Very truly yours,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*s/ Mark J. Leavy*
**Mark J. Leavy, Esquire**
Attorney for Defendant
Cal-Tex Protective Coatings, Inc.

Dated: July 24, 2023

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
**BY:  Mark J. Leavy, Esquire**                    **ATTORNEY FOR DEFENDANT**
**Attorney ID:  014312004**                         **Cal-Tex Protective Coatings, Inc.**
**535 Route 38 East**
**Suite 501**
**Cherry Hill, NJ  08002**
**(856) 663-4300**

**0447-113490(MJL/SSN)**

Carol Lassiter-Williams, on behalf of herself and             **UNITED STATES DISTRICT COURT**
all others similarly situated,                                              **DISTRICT OF NEW JERSEY**

    Plaintiffs,                                        **CIVIL ACTION NO.**

  vs.

Cal-Tex Protective Coatings, Inc.,
and John Does 1-10,

    Defendants.

# NOTICE OF REMOVAL

# EXHIBIT A

Andrew R. Wolf, Esq. – NJ Attorney ID No. 018621995
The Dann Law Firm, P.C.
1520 U.S. Hwy. 130, Suite 101
North Brunswick, NJ 08920
(732) 545-7900/ fax: (732) 545-1030

David C. Ricci, Esq., NJ Attorney ID No. 037622011
Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, NJ 07078
(973) 218-2627/ fax: (973) 206-6955

*Attorneys for Plaintiff and the Putative Class*

| | |
|---|---|
| CAROL LASSITER-WILLIAMS, on behalf of herself and all others similarly situated,<br><br>                            Plaintiff,<br><br>    vs.<br><br>CAL-TEX PROTECTIVE COATINGS, INC., and John Does 1-10<br>                        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY:  LAW DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NO. ESX-L-3727-23<br><br>**SUMMONS TO CAL-TEX PROTECTIVE COATINGS, INC.** |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/ 10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment

is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.


Dated:  June 22, 2023                          _s/Michelle M. Smith, Esq._
                                               Clerk of the Superior Court


Name and Address of Defendant to be Served:
**CAL-TEX PROTECTIVE COATINGS, INC.**
Attn: Daniel McDonald, Esq, Corp. Counsel
7455 Natural Bridge Caverns Rd.
Schertz, TX 78154
*Defendant*
*via email with permission of corporate counsel*

Andrew R. Wolf, Esq. – NJ Attorney ID No. 018621995
The Dann Law Firm, P.C.
1520 U.S. Hwy. 130, Suite 101
North Brunswick, NJ 08920
(732) 545-7900/ fax: (732) 545-1030

David C. Ricci, Esq., NJ Attorney ID No. 037622011
Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, NJ 07078
(973) 218-2627/ fax: (973) 206-6955

*Attorneys for Plaintiff and the Putative Class*

| | |
|---|---|
| CAROL LASSITER-WILLIAMS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CAL-TEX PROTECTIVE COATINGS, INC., and John Does 1-10<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY ESSEX COUNTY:  LAW DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NO. ESX-L-_____-23<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## NATURE OF THE CASE

1.     In this putative class action, Plaintiff Carol Lassiter-Williams, on behalf of herself and others similarly situated, alleges that Defendant Cal-Tex Protective Coatings, Inc. and its principals regularly sell vehicle service contracts that contain provisions in violation of the New Jersey Consumer Service Contract Act ("CSCA"), N.J.S.A. 56:12-87 to -96, the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.,* and Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 to -18.

2.     These contracts are subject to the CSCA, which mandates certain provisions and disclosures in every contract, such as a minimum time period during which a contract is cancelable for a full refund and the deadline for the refund to be issued. The service contracts used in the transaction of Plaintiff and others similarly situated contain cancellation provisions that are contrary to the CSCA and do not allow the consumer to cancel and obtain a refund.

## PARTIES

3.     Plaintiff Carol A. Lassiter-Williams resides in South Orange, New Jersey.

4.      Defendant Cal-Tex Protective Coatings, Inc. ("Cal-Tex" or "Defendant") is a foreign corporation doing business in New Jersey and has a main business address of 7455 Natural Bridge Caverns Rd., Schertz, TX 78154.

5.      Defendants John Does 1-10 are natural persons unknown to plaintiff, but involved in the same transactions and occurrences under which the claims herein are based.

## VENUE

6.      Venue in this action properly lies in Essex County because Plaintiff resides there and Defendant does business there.

## FACTUAL ALLEGATIONS

7.      At all times relevant, Cal-Tex was licensed by the State of New Jersey to sell services contracts in the state.

8.      The John Doe Defendants set the policies and practices of Cal-Tex, including the policies and practices complained of herein related to the selling of service contracts in New Jersey.

9.      The John Doe Defendants set the policies and practices regarding the forms used by Cal-Tex in the sale of service contracts in New Jersey.

10.     The John Doe Defendants were directly involved in drafting, reviewing, and/or approving the forms used by Cal-Tex in the sale of service contracts in New Jersey including but not limited to the service contract sold to Plaintiff.

11.     At all times relevant, Cal-Tex sells and/or offers to sell motor vehicle service contracts in the state of New Jersey through its network of motor vehicle dealers located in New Jersey.

12.     At all times relevant, Cal-Tex sold motor vehicle service contracts through 36 Water Street Auto, LLC, d/b/a Hudson Kia ("Hudson Kia").

13.     On July 1, 2017, Plaintiff purchased a used 2014 Kia Sorento SX, VIN 5XYKW4A77EG471512, (the "Sorento") from Hudson Kia. A copy of the Retail Installment Sale Contract ("RISC") is attached hereto as **Exhibit A.**

14.     Plaintiff and others similarly situated are natural persons who purchased their vehicles for personal, family or household purposes.

15.     At the time of purchase, Plaintiff also purchased a ResistAll NG2 Contract ("ResistAll Contract") for $3,105.00, which Cal-Tex sold through Hudson Kia. A copy of the ResistAll Contract, with personal identifiers redacted, is attached hereto as **Exhibit B.**

16.     The front of ResistAll Contract states, "Cal-Tex reserves the right to reject this Registration without obligation to any party if the proper [registration] fees are not

submitted to Cal-Tex by the Dealer within sixty (60) days of the date of the application of the product to Your Vehicle."

17.     Pursuant to the ResistAll Contract, Hudson Kia timely remitted the "proper fees" to Cal-Tex.

18.     Cal-Tex did not reject the ResistAll Contract and the coverage promised under the contract became active.

19.     In addition to the ResistAll Contract, Cal-Tex sells other coverages through its New Jersey dealer network meeting the definition of a "Service Contract" and/or a "Motor Vehicle Ancillary Protection Product" as defined by the CSCA at N.J.S.A. 56:12-87.

20.     The sellers of the ResistAll Contracts and/or other Cal-Tex Service Contracts to others similarly situate remitted the "proper fees" to Caltex.

21.     Cal-Tex did not reject the ResistAll Contracts and/or other Cal-Tex Service Contracts of others similarly situated, and the coverages promised under their contracts became active.

22.     The ResistAll Contracts and/or other Cal-Tex Service Contracts are form contracts that Defendant used in their transactions with Plaintiff and others similarly situated.

23.     The ResistAll Contracts and/or other Cal-Tex Service Contracts are contracts or agreements between Cal-Tex and Plaintiff and others similarly situated to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of their motor vehicles for a fee to Cal-Tex.

24.     The ResistAll Contracts and/or other Cal-Tex Service Contracts are contracts or agreements between Cal-Tex and Plaintiff and others similarly situated to perform for a fee to Cal-Tex, one or more of the following with respect to a motor vehicle:

   1. the repair or replacement of tires or wheels on a motor vehicle damaged as a result of coming into contact with road hazards including but not limited to potholes, rocks, wood debris, metal parts, glass, plastic, curbs, or composite scraps;

   2. the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal without affecting the existing paint finish and without replacing vehicle body panels, sanding, bonding, or painting;

   3. the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired.

25.     Cal-Tex did not reject the ResistAll Contracts and/or other Cal-Tex Service Contracts of Plaintiff and others similarly situated.

26.     The coverages promised under the ResistAll Contracts and/or other Cal-Tex Service Contracts of Plaintiff and others similarly situated became active.

27.     Plaintiff and others similarly situated purchased their ResistAll Contracts and/or other Cal-Tex Service Contracts to provide protections for the vehicles they purchased.

28.     The price of the vehicles purchased by Plaintiff and others similarly situated exceed $250.00.

29.     The motor vehicle dealers and other sellers located in New Jersey who sold the ResistAll Contracts and/or other Cal-Tex Service Contracts to others similarly situated submitted the correct registration fees to Cal-Tex within 60 days of the registration dates set forth in their contracts.

30.     Defendant and John Does 1-10 drafted the ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions of Plaintiff and others similarly situated.

31.     Defendant and John Does 1-10 approved the provisions of the ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions of Plaintiff and others similarly situated.

32.     The provisions set forth of the back side of the ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated are printed in a tiny font size that is less than 10 point and in a smaller font size than the provisions set forth on the front side.

33.     Plaintiff and others similarly situated are the service contract holders for the service contracts sold to them.

34.     The ResistAll Contract and other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated contains, in relevant part, the following provision: "**CANCELLATION OF WARRANTY: This Warranty is non-cancellable.**"

35.     The ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated is misleading and deceptive because the provision prohibiting cancellation with a refund is contrary to the CSCA, which requires a minimum time period of 10 days for the contract holder to cancel a service contract for a full refund of the purchase price when they have received the contract at the time of purchase and a minimum time period of 20 days after the contract was sent when consumers did not receive the contract on the purchase date. *See* the CSCA at N.J.S.A. 56:12-93(k)(1).

36.     The ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated is misleading and deceptive because the contracts do not contain a provision notifying the contract holder that for cancellations made in the time periods specified in the previous paragraph require Defendant to issue refunds of the full purchase price within 45 days of cancellation for pay an additional 10% per month penalty so long as the holder has not made a claim under the contract. *See* the CSCA at N.J.S.A. 56:12-93(k)(2).

37.     The ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated contains, in relevant part, the following provision:

> **IV. LIMITATIONS ON CALTEX LIABIILTY:** CALTEX'S MAXIMUM LIABILITY FOR THE RESISTALL PRODUCT AND THIS WARRANTY IS LIMITED OT HE AMOUNTS CALCULATED PURSUANT TO THE TERMS OF THIS WARRANTY. <u>CALTEX SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.</u> IF CALTEX DOES NOT RECEIVE FROM THE DEALER THE REGISTRATION FEES FOR THIS WARRANT TO BECOME EFFECTIVE, CALTEX SHALL HAVE NO LIABILITY TO YOU OR THE DEALER. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND CALLS FOR CERTAIN REQUIREMENTS. YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, DO NOT ALLOW CERTAIN REQUIREMENTS, OR DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, <u>SO THE LIMITATIONS, REQUIREMENTS OR EXCLUSIONS MAY NOT APPLY TO YOU.</u> [underline emphasis added]

38.     The "Limitations on CalTex Liability" provision in the ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated purports to prohibit Cal-Tex from being liable to contract holders for incidental, consequential, or punitive damages.

39.     The "Limitations on CalTex Liability" provision in the ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated fails to state whether the limitations described therein are allowed in New Jersey.

40.     The "Limitations on CalTex Liability" provision in the ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated is misleading and deceptive because New Jersey law allows for treble damages for prevailing consumers under the Consumer Fraud Act and punitive damages under the Punitive Damages Act, N.J.S.A. 2A:15-5.9, *et seq.*

41.     The ResistAll Contracts and/or other Cal-Tex Service Contracts used in the transactions with Plaintiff and others similarly situated contains, in relevant part, the following provision:

> **VII. DISPUTE RESOLUTION CLAUSE:** Any controversy or claim arising out of or relating to this warranty, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its arbitration rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitrator(s) shall award to the prevailing party, if any, as determined by the

arbitrators all of their costs and fees. "Costs and fees" mean all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorneys' fees. The award of the arbitrators shall be accompanied by a reasoned opinion. Both CalTex and You agree that this dispute resolution clause shall be a complete defense in any suit, action, or proceeding instituted by any federal, state or local court with respect to any controversy or dispute arising out of this Warranty.

42. The "Dispute Resolution Clause" is misleading and deceptive because the rules of the American Arbitration Association ("AAA") do not allow for the administrative expenses of arbitration including "arbitrators' fees" and other AAA fees to be shifted to consumers unless the arbitrator makes a finding that the consumer's "claim or counterclaim was filed for the purposes of harassment or is patently frivolous." *See* AAA Consumer Rule R-44, downloadable at *https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf*

43. At all times relevant, the administrative fees that AAA charges to conduct a consumer arbitration demand is thousands of dollars. See AAA fee schedule, downloadable at *https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf*

44. At all times relevant, the administrative fee that AAA charged consumers to file an arbitration demand is limited to $200.00. See AAA fee schedule, downloadable at *https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf*

45. The "Dispute Resolution Clause" is misleading and deceptive because it purports to prohibit from seeking Plaintiff and others similarly situated from seeking relief of their statutory rights without identifying any statutes to put the consumer on notice. *See Atalese v. U.S. Legal Servs. Grp., L.P.,* 219 N.J. 430 (2014).

46. The "Dispute Resolution Clause" is misleading and deceptive because the language, font size, and placement of the provision did not clearly and unambiguously notify Plaintiff and others similarly situated that Defendant intended the provision to be a waiver of their right to seek relief of their statutory rights in a court of law. *See Atalese v. U.S. Legal Servs. Grp., L.P.,* 219 N.J. 430 (2014).

47. Although the ResistAll Contract and other contracts that Defendant used in its transactions with Plaintiff and others similarly situated are described a "limited warranties," there are in fact "service contracts" because they are contracts obligating a third-party to perform services at an additional cost for the motor vehicles sold or leased. *See* definitions of "service contract" and "warranty" in CSCA at N.J.S.A. 56:12-87; the CFA at N.J.S.A. 56:8-67.

48. After she got home with the Sorento, Plaintiff discovered that she paid $3,105.00 for the ResistAll Contract, far more than she was willing to pay or believed she was being charged.

49. Plaintiff returned to Hudson Kia on July 2, 2017 with questions about the amounts she was charged and wanted to cancel the ResistAll Contract.

50. Hudson Kia representatives told Plaintiff that her ResistAll Contract was not cancelable and refused to cancel the contract.

51. On July 2, 2017, Plaintiff called Cal-Tex directly requesting to cancel her ResistAll Contract for a refund.

52. Cal-Tex representatives told her that the ResistAll Contract was not cancelable and refused to cancel and refund Plaintiff's purchase price.

53. Cal-Tex routinely refuses to refund the purchase prices paid by others similarly situated to Plaintiff who have attempted to cancel their ResistAll Contracts and/or other Cal-Tex Service Contracts for a refund.

54. Plaintiff attempted to cancel their ResistAll Contracts and/or other Cal-Tex Service Contracts directly with the selling dealer and receive refunds of the purchase price, but was refused by the selling dealer.

55. Plaintiff attempted to cancel their ResistAll Contracts and/or other Cal-Tex Service Contracts directly with Cal-Tex and receive refunds of the purchase price, but was refused by Cal-Tex.

56. Plaintiff wanted to cancel their ResistAll Contracts and/or other Cal-Tex Service Contracts and receive refunds of the purchase price, but was deterred by the contract's cancellation provision that made the contract "non-cancelable."

57. Had Cal-Tex disclosed the cancellation provisions required by the CSCA, Plaintiff and others similarly situated would have discovered that they had the right to cancel their contracts and obtain a refund of the purchase price.

58. Had Plaintiff known of her cancellation rights under the CSCA, she would have canceled her contract under the CSCA's provisions.

59. Had others similarly situated known of their cancellation rights under the CSCA, they would have canceled their contracts under the CSCA's provisions.

60. Had others similarly situated known of their cancellation rights under the CSCA, they would have been able to make an informed decision about whether they wanted to cancel their contracts under the CSCA's provisions.

61. Cal-Tex is the person or entity who is contractually obligated to the service contract holder under the terms of the ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated.

62. Plaintiff and others similarly situated are the service contract holders for the ResistAll Contract sold to them.

## CLASS ACTION ALLEGATIONS

63.    This action is brought and may properly proceed as a class action, pursuant to the
provisions of *Rule* 4:32 of the New Jersey Court Rules for a b(2) class and for a b(3)
class.  Plaintiff brings this action on behalf of herself and the putative members of the
Class and Sub-Class.  Plaintiff seeks certifications of a class and a subclass, initially
defined as follows:

**The CLASS:**
All natural persons who are residents in New Jersey on the date this Complaint is filed,
who, at any time on or after the date six years prior to the date this Complaint is filed,
entered into a contract or agreement incident to the purchase or lease of a motor vehicle for
personal, family, or household purposes, from a licensed motor vehicle dealer located in
New Jersey, under which Cal-Tex was contractually obligated to the contract holder that
was the same as or similar to the contract used in Plaintiff's transaction; AND

(a) the contract stated it was non-cancelable or that no refund would be provided;

(b) the contract contained a provision that limited or excluded Cal-Tex's liability for
incidental, consequential or punitive damages;

(c) the contract contained a provision that limited or excluded the damages the holder
could recover from Cal-Tex without stating whether the limitations or exclusions applied
to contracts entered into in New Jersey; or

(d) the contract contained a provision that requires "any controversy or claim" to be
settled by arbitration administered by the American Arbitration Association ("AAA")
under the AAA rules, yet also stated that the prevailing party would be entitled to an
award of all of their costs and fees, including the arbitrators' fees, or other AAA
administrative fees.

**The SUB-CLASS:**
All members of the Class who attempted to cancel the contract and were denied a full
refund of the amount the selling dealer charged for the contract or were discouraged from
seeking a refund by the contract provision making the contract non-cancellable.

The Class and Sub-Class definitions may be subsequently modified or refined.

Specifically excluded from the Class and Sub-Class are the owners, officers, directors,
employees, affiliates, parents, subsidiaries, heirs, successors and assigns of Cal-Tex,
whether natural persons or entities. Also excluded from the class is any judge or
magistrate involved in this matter.

64.    For the purposes of the Class definition, a contract is the "same as or similar to" the one
used in Plaintiff's transaction if any of the following conditions apply: the contract
required Cal-Tex to perform, or to provide indemnification for the performance of, the
maintenance, repair, replacement, or service of property for the operational or structural

failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances. In the case of a motor vehicle, such circumstances may include towing, rental, and emergency road services, and other road hazard protections; the repair or replacement of tires or wheels on a motor vehicle damaged as a result of coming into contact with road hazards including but not limited to potholes, rocks, wood debris, metal parts, glass, plastic, curbs, or composite scraps; the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal without affecting the existing paint finish and without replacing vehicle body panels, sanding, bonding, or painting; the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired; the replacement of a motor vehicle key or key-fob in the event that the key or key-fob becomes inoperable or is lost or stolen;  leased motor vehicle excess wear and use protection. *See* N.J.S.A. 56:12-87.

65.   This action has been brought and may be maintained as a "B3 - class" as to the Class. Certification of a class under R. 4:32-1(b)(3) is appropriate in that the questions of law and fact common to members of the Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial savings of the expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

66.   This action has been brought and may be maintained as a "B3 - class" as to the Sub-Class. Certification of a class under R. 4:32-1(b)(3) is appropriate in that the questions of law and fact common to members of the Sub-Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial savings of the expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

67.   This action has been brought and may be maintained as a "B2 - class" as to the Class. Certification of a class under R. 4:32.-1(b)(2) is appropriate in that Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

68.   The members of the Class and Sub-Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

69.  There are at least 50 members of the Class and Sub-Class for whose benefit this action is brought.

70.  There are at least 100 members of the Class and Sub-Class for whose benefit this action is brought.

71.  The members of the Class and Sub-Class for whose benefit this action is brought are readily identifiable by Defendant's records as Defendant maintains contact information for all putative class members in its contracts.

72.  Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class because all such claims arise out of form contracts used by Defendant that contain provisions that do not comply with New Jersey law.

73.  There are questions of law and fact common to the members of the Class and Sub-Class . These common questions include:

**As to the Class:**

a.  Whether Defendant's form contracts sold to Plaintiff and others similarly situated constitute "service contracts" or contracts for "motor vehicle ancillary protection products" as defined by the Consumer Service Contract Act ("CSCA"), at N.J.S.A. 56:12-87;

b.  Whether Defendants' form contracts sold to Plaintiff and others similarly situated are subject to the CSCA, N.J.S.A. 56:12-87 to -96;

c.  Whether Defendants' form contracts fail to disclose to the contract holders their cancellation rights under the CSCA at N.J.S.A. 56:12-93(k);

d.  Whether the cancellation provisions in the service contracts sold to Plaintiff and others similarly situated contradict the requirements of the CSCA, N.J.S.A. 56:12-87 to -96;

e.  Whether the cancellation provisions in the service contracts sold to Plaintiff and others similarly situated do not comply with the Consumer Service Contract Act, the Consumer Fraud Act, and/or the Truth in Consumer Contract, Warranty and Notice Act.

f.  Whether the "Limitation on Caltex Liability" provision in Defendants' form contracts sold to Plaintiff and others similarly situated disclose to the contract holder whether the limitations contained therein apply to consumers who purchased their contracts in New Jersey.

g.  Whether the "Alternative Dispute Resolution" provision in Defendants' form contracts sold to Plaintiff and others similarly situated misrepresent the AAA's policy towards consumers being liable for more than $200.00 of the AAA administrative fees if Defendant is the prevailing party.

h. Whether the aforementioned Non-"Cancellation," "Limitation on Caltex Liability," and/or "Alternative Dispute Resolution" provisions in Defendants' form contracts sold to Plaintiff and others similarly situated deter or discourage contract holders from exercising their statutory rights;

**As to the Sub-Class, in addition to a – h above:**

a. Whether Plaintiff and the putative Sub-Class members attempted to cancel their service contracts;

b. Whether Defendant refused to cancel the service contracts of Plaintiff and the putative Sub-Class members.

c. Whether Plaintiff and the putative Sub-Class members received any amount of refund when they attempted to cancel their service contracts;

d. Whether Plaintiff and the putative Sub-Class members whose refund requests were refused are entitled to damages, a 10% per month penalty under the CSCA, and or treble damages under the CFA;

e. Whether the Plaintiff and Sub-Class members are entitled to a statutory penalty under the TCCWNA.

74. As to the Sub-Class, the questions of law and/or fact common to the members of the Class and Sub-Class predominate over any questions affecting only individual members.

75. Plaintiff has no interests antagonistic to those of the Class or Sub-Class.

76. Plaintiff will fairly and adequately protect the interests of the Class and Sub-Class, and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is economically impractical for members of the Sub-Class to prosecute individual actions.

78. The questions of law or fact common to the members of the Sub-Class predominate over any questions affecting only individual members.

79. A class action will cause an orderly and expeditious administration of the claims of the Sub-Class and will foster economies of time, effort and expense.

80. Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS ACTION CLAIMS

### FIRST COUNT
**Violations of the Consumer Fraud Act
as to the Class**

81. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

82. Defendant's sale of motor vehicle coverages and protection products and services to Plaintiff and others similarly situated are transactions subject to the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1, *et seq.*

83. Plaintiff and others similarly situated are "consumers" and "persons" with respect to the CFA.

84. Defendant is a "seller" with respect to and is subject to the CFA.

85. The Consumer Fraud Act ("CFA"), at N.J.S.A. 56:8-2, prohibits "act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby,."

### A. Defendant's Violations of the Consumer Service Contract Act

86. The Consumer Service Contract Act ("CSCA"), N.J.S.A. 56:12-87 to -96, regulates the sale of "service contracts" and "motor vehicle ancillary protection products" sold in New Jersey.

87. Pursuant to N.J.S.A. 56:12-96(a), a violation of any provision of the CSCA shall be an unlawful practice and is a *per se* violation of the CFA.

88. Pursuant to N.J.S.A. 56:12-87, "'Motor vehicle ancillary protection product' means a contract or agreement between a provider and a consumer for a specific duration, for a provider fee or other separately stated consideration, to perform one or more of the following with respect to a motor vehicle:
(1) the repair or replacement of tires or wheels on a motor vehicle damaged as a result of coming into contact with road hazards including but not limited to potholes, rocks, wood debris, metal parts, glass, plastic, curbs, or composite scraps;
(2) the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal without affecting the existing paint finish and without replacing vehicle body panels, sanding, bonding, or painting;

(3) the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired."

89.     Pursuant to N.J.S.A. 56:12-87, "'Service contract' means a contract or agreement between a provider and a consumer for any duration, for a provider fee or other separately stated consideration, to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances. In the case of a motor vehicle, such circumstances may include towing, rental, and emergency road services, and other road hazard protections. A service contract may provide for the maintenance, repair, replacement, or service of the property for damage resulting from power surges or interruption, or accidental damage from handling. A service contract also includes a motor vehicle ancillary protection product…."

90.     The CSCA considers "Motor Vehicle Ancillary Protection Products" to be "Service Contracts." *See* N.J.S.A. 56:12-87.

91.     The ResistAll Contracts and/or other Cal-Tex Service Contracts entered into by Plaintiff and others similarly situated are Service Contracts as defined by the CSCA.

92.     Pursuant to N.J.S.A. 56:12-87, Cal-Tex is the "Provider" and is contractually obligated to the service contract holders under the terms of the ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated.

93.     Plaintiff and others similarly situated are "Consumers" and "Contract holders" as defined by and subject to the CSCA.

94.     Pursuant to N.J.S.A. 56:12-93, "[a] service contract issued, offered for sale, or sold in this State shall be written in a simple, clear, understandable, and easily readable way and shall contain the requirements set forth in this section, as applicable:"

        * * * *
        k.   the conditions governing the cancellation of the service contract by the service contract holder, which shall:
            (1) permit the contract holder, if the contract holder makes no claim arising under the contract, to cancel the contract:
                (a) within 10 days of receipt of the contract, or a longer period specified in the contract, if delivered at the time of purchase; or
                (b) within 20 days of the date the contract was sent to the contract holder, or a longer period specified in the contract, if not delivered at the time of purchase; and
            (2) if cancelled within the time period specified in subparagraph (a) or (b) of paragraph (1) of this subsection, require the provider to provide the contract holder with the full purchase price or amount paid on the contract by refund or credit to the account of the contract holder, and to additionally pay the contract holder a 10% per

month penalty, based upon the purchase price of the contract, if the refund or credit is not completed within 45 days of the cancellation of the contract.

95. Pursuant to N.J.S.A. 56:12-94(b), "[a] service contract shall not be issued, offered for sale, or sold in this State unless the provider or seller, if not the provider, presents…. a copy of the service contract to the service contract holder, which may be presented electronically or in writing, at the point of sale or within a reasonable period of time from the date of purchase."

96. The ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated violate the CSCA, and thus the CFA, because the contracts are disclosed as "non-cancelable" and do not allow for the statutory minimum refund periods set forth in N.J.S.A. 56:12-93(k).

97. Plaintiff and others similarly situated suffered ascertainable losses as  result of Defendant's unlawful provision stating the contracts were "non-cancelable."

98. Plaintiff and others similarly situated who purchased ResistAll Contracts and/or other Cal-Tex Service Contracts have an extended right to cancel their contracts for a refund because of Defendant's unlawful "non-cancelable" provision.

99. Plaintiff and others similarly situated are entitled to injunctive relief requiring notice that Defendant's provision stating the contracts were "non-cancelable" is unlawful and the be provided an extended opportunity to seek additional relief or cancel their contracts for a full refund. N.J.S.A. 56:8-19.

### B. Unlawful Limitations on Caltex Liability Provision

100. The ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated contain a provision stating: "CALTEX SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES."

101. The ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated contain a provision stating: "SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, DO NOT ALLOW CERTAIN REQUIREMENTS, OR DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE LIMITATIONS, REQUIREMENTS OR EXCLUSIONS MAY NOT APPLY TO YOU."

102. Defendant's exclusion or limitation of "incidental, punitive or consequential damages" was not conspicuously displayed because, without limitation, it was on the backside of the contract, with no reference to the provision near the space for the customer's signature; was in small print of less than 10 points and no larger than the rest of the provisions on the backside of the contract, and placed in the middle of the provisions listed on the backside of the contract.

103.    By failing to conspicuously display Defendant's exclusion or limitation of "incidental, punitive or consequential damages," Defendant's provision is unconscionable and unenforceable.

104.    Defendant's exclusion or limitation of "incidental, punitive or consequential damages" violates New Jersey public policy because this blanket exclusion and/or limitation would prohibit these damages resulting from Defendant's intentional or reckless conduct.

105.    Defendant's exclusion or limitation of "incidental, punitive or consequential damages" constitutes a violation of the CFA because the exclusion and/or limitation is against New Jersey public policy and contradicts the CFA's treble damages provision at N.J.S.A. 56:8-19.

106.    Plaintiff and others similarly situated suffered ascertainable losses as  result of Defendant's exclusion or limitation of "incidental, punitive or consequential damages."

107.    Plaintiff and others similarly situated are entitled to injunctive relief requiring notice that Defendant's exclusion or limitation of "incidental, punitive or consequential damages" is unlawful and the extended opportunity to seek additional relief or cancel their contracts for a full refund. N.J.S.A. 56:8-19.

### C. Unlawful Dispute Resolution Clause

108.    The ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated contain a provision stating: "Any controversy or claim arising out of or relating to this warranty, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its arbitration rules..."

109.    The ResistAll Contracts and/or other Cal-Tex Service Contracts sold to Plaintiff and others similarly situated contain a provision stating: "The arbitrator(s) shall award to the prevailing party, if any, as determined by the arbitrators all of their costs and fees. 'Costs and fees' mean all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorneys' fees."

110.    The official policy of the AAA is for the consumer not to be charged more than $200.00 for the consumer's share of the forum's administrative fees, unless the consumer's "claim or counterclaim was filed for the purposes of harassment or is patently frivolous."

111.    The AAA charges administrative fees that are thousands of dollars more than filing an action in New Jersey Superior Court.

112.    By including a dispute resolution clause in the ResistAll Contracts and/or other Cal-Tex Service Contracts that requires any controversy or claim arising out of, relating to, or the breach of the contract to be settled by an "arbitration administered by the American Arbitration Association in accordance with its arbitration rules," but including a provision that contradicts AAA rules by purporting to make the consumer potentially liable for the

thousands of dollars of AAA administrative fees if Defendant is the "prevailing party," Defendant violated the CFA in its contracts with Plaintiff and others similarly situated.

113.    By including a dispute resolution clause in the ResistAll Contracts and/or other Cal-Tex Service Contracts that fails to explain that contract holders are purportedly waiving the right to seek relief in court for statutory rights, Defendant violated the CFA in its contracts with Plaintiff and others similarly situated. *See Atalese v. U.S. Legal Servs. Grp., L.P.,* 219 N.J. 430, 446 (2014).

114.    By including a dispute resolution clause in the ResistAll Contracts and/or other Cal-Tex Service Contracts that fails to explain what arbitration is or how arbitration differs from a court proceeding, Defendant violated the CFA in its contracts with Plaintiff and others similarly situated. *See Atalese v. U.S. Legal Servs. Grp., L.P.,* 219 N.J. 430, 446 (2014).

115.    Plaintiff and others similarly situated suffered ascertainable losses as a result of the unlawful dispute resolution provisions in the ResistAll Contracts and/or other Cal-Tex Service Contracts.

116.    Plaintiff and others similarly situated who purchased ResistAll Contracts and/or other Cal-Tex Service Contracts have an extended right to cancel their contracts for a refund because of Defendant's unlawful dispute resolution provisions.

117.    Plaintiff and others similarly situated are entitled to injunctive relief requiring notice that Defendant's dispute resolution provision is unlawful and the be provided an extended opportunity to seek additional relief or cancel their contracts for a full refund. N.J.S.A. 56:8-19.

## <u>SECOND COUNT</u>
### Violations of the Truth-in-Consumer Contract, Warranty and Notice Act
### as to the Class

118.    Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

119.    The Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), at N.J.S.A. 56:12-14 to -18 regulates the content of consumer contracts, warranties, notices and sign.

120.    "No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A. 56:12-15.

121.    The CSCA and the CFA create clearly established rights of Plaintiff and others similarly situated or responsibilities of Defendant.

122.   The AAA consumer rules and fee schedule create clearly established rights of Plaintiff and others similarly situated or responsibilities of Defendants.

123.   The ResistAll Contracts and/or other Cal-Tex Service Contracts that Defendant entered into with Plaintiff and others similarly situated are "consumer contracts" or "consumer notices" with respect to the TCCWNA.

124.   Plaintiff and others similarly situated are "consumers" with respect to the TCCWNA.

125.   Defendant is a seller, lessor, creditor, lender or bailee with respect to the TCCWNA.

126.   Defendant gave or displayed written contracts or consumer notices to Plaintiff and others similarly situated which included a provision or provisions that violated the clearly established rights of Plaintiff and others similarly situated as established by New Jersey or Federal law.

127.   Defendant gave or displayed written contracts or consumer notices to Plaintiff and others similarly situated which included a provision or provisions that violated the clearly established responsibilities of Defendant.

128.   By offering and/or displaying and/or entering into a contract with Plaintiff and others similarly situated that contained provisions contrary to the statutorily required minimum cancellation periods at N.J.S.A. 56:12-93(k), Defendant violated the TCCWNA.

129.   By offering and/or displaying and/or entering into a contract with Plaintiff and others similarly situated that contained provisions limiting Defendant's liability for incidental, consequential, or punitive damages that is contrary to the treble damages provision of the CFA at N.J.S.A. 56:8-19, Defendant violated the TCCWNA.

130.   By offering and/or displaying and/or entering into a contract with Plaintiff and others similarly situated that contained provisions that shifted the AAA administrative fees to the consumer if Defendant were to be considered a "prevailing party" in an arbitration hearing, Defendant violated the TCCWNA.

131.   No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void. No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties. N.J.S.A. 56:12-16.

132.   As defined by the CSCA, the ResistAll Contracts and/or other Cal-Tex Service Contracts that Defendant entered into with Plaintiff and others similarly situated are not "warranties".

133. Plaintiffs and others similarly situated are aggrieved consumers because they suffered economic or other harm by the unlawful provisions in Defendant's ResistAll Contracts and/or other Cal-Tex Service Contracts.

134. By offering and/or displaying and/or entering into a contract with Plaintiff and others similarly situated that contained provisions excluding or limiting Defendant's liability without stating whether the exclusions or limitation were valid in New Jersey, Defendant violated the TCCWNA.

135. Plaintiff and others similarly situated are entitled to statutory damages of not less than $100.00 for each contract or notice in violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

136. Pursuant to the last sentence of TCCWNA at N.J.S.A. 56:12-17, "A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract."

137. N.J.S.A. 56:12-15 is section 2 of TCCWNA.

138. The last sentence of TCCWNA at N.J.S.A. 56:12-17 as set forth above does not require a consumer to be aggrieved to request the court to void their contract.

139. Plaintiff and others similarly situated are entitled to injunctive relief requiring notice that the ResistAll Contracts and/or other Cal-Tex Service Contracts did not comply with their cancellation rights under the CSCA and the extended opportunity to cancel their contracts for a full refund. N.J.S.A. 56:12-17.

### THIRD COUNT
### Declaratory Judgment Pursuant to the Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50, et seq., as to the Class

140. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

141. The Uniform Declaratory Judgments Law provides:

> A person interested under a … written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute … [or] contract … may have determined any question of construction or validity arising under the instrument, statute …[or] contract … and obtain a declaration of rights, status or other legal relations thereunder. [N.J.S.A. 2A:16-53.]

142. The ResistAll Contracts and/or other Cal-Tex Service Contracts provided to Plaintiff and others similarly situated are contract as contemplated by the Uniform Declaratory Judgments Law.

143. The ResistAll Contracts and/or other Cal-Tex Service Contracts provided to Plaintiff and others similarly situated violated the CSCA, the CFA, and the TCCWNA.

144. The Court should enter a declaratory judgment that the ResistAll Contracts and/or other Cal-Tex Service Contracts provided to Plaintiff and others similarly situated as set forth in the First and Second Counts violate the CSCA, the CFA, and the TCCWNA.

145. The Court should enter a declaratory judgment enjoining Defendant from future violations of the CSCA, the CFA, and the TCCWNA and requiring Defendant to correct the ResistAll Contracts and/or other Cal-Tex Service Contracts and practices that violate the CSCA, the CFA, and the TCCWNA.

146. The members of the putative Class should be provided Notice that Defendants' form ResistAll Contracts and/or other Cal-Tex Service Contracts Sale and practices violate the CSCA, the CFA, and the TCCWNA.

## FOURTH COUNT
### Violations of the Consumer Fraud Act
### as to the Sub-Class

147. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

148. Despite the attempts by Plaintiff and others similarly situated, Defendant refused to allow Plaintiff and others similarly situated to cancel their ResistAll Contracts and/or other Cal-Tex Service Contracts and obtain a refund, in violation of the CSCA and the CFA.

149. As a result of Defendant's violations of the CSCA and the CFA, Plaintiff and others similarly situated suffered an ascertainable loss.

150. As a result of Defendants' violations of the CSCA and the CFA, Plaintiff and others similarly situated suffered an ascertainable loss equal to the purchase prices they paid for their ResistAll Contracts and/or other Cal-Tex Service Contracts and any finance charges incurred to finance the cost of their contracts.

151. Plaintiff's ascertainable losses include:

   a. $3,105.00, the cost of her ResistAll Contract;
   b. the interest incurred on the $3,105.00 price of the ResistAll Contract after Plaintiff attempted to cancel her contract on July 2, 2017.

## FIFTH COUNT
### Violations of the Truth-in-Consumer Contract, Warranty and Notice Act
### as to the Sub-Class

152. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

153.   Plaintiff and others similarly situated are aggrieved consumers because Defendants refused to refund the purchase price their ResistAll Contract and other contract when they attempted to cancel their contracts.

154.   Plaintiff and others similarly situated are entitled to statutory damages of not less than $100.00 for each contract or notice in violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, demands judgment against the Defendants as follows:

a.   For a declaratory judgment that Defendant's form ResistAll Contracts and/or other Cal-Tex Service Contracts do not comply with the CSCA, the CFA, and/or the TCCWNA;

b.   For a declaratory judgment that Defendant violated the CSCA, the CFA, and the TCCWNA with respect to the sale of ResistAll Contracts and/or other Cal-Tex Service Contracts and other contracts sold in New Jersey;

c.   For injunctive relief prohibiting Defendant from future violations of the CSCA, the CFA and the TCCWNA;

d.   For an order certifying this matter as a class action pursuant to Rule 4:32-1(b)(2) as to the Class;

e.   For an order certifying this matter as a class action pursuant to Rule 4:32-1(b)(3) as to the Sub-Class;

f.   For an order appointing the named Plaintiff as class representative and appointing the attorneys of the Dann Law Firm, PC, and the Law Office of David C. Ricci, LLC as class counsel;

g.   As an injunctive remedy, requiring Defendants to provide notice to all members of the Class of the liability findings as to Plaintiff and providing an extended right for the class members to cancel their contracts;

h.   As an injunctive remedy, requiring Defendants to provide notice to all members of the Class of the liability findings as to Plaintiff and informing them that their ResistAll Contracts and/or other Cal-Tex Service Contracts and other contracts are voidable and that they may bring a separate action to request that the court void their contracts and for Defendant to provide a refund pursuant to the CFA and/or the last sentence of TCCWNA at N.J.S.A. 56:12-17;

i.   For actual damages as to the Sub-Class;

j.   For treble damages, pursuant to the Consumer Fraud Act at N.J.S.A. 56:8-19, as to the Sub-Class;

k.  For maximum statutory damages under the Truth-in-Consumer Contract, Warranty and Notice Act, pursuant to N.J.S.A. 56:12-17, as to the Sub-Class;

l.  For reasonable attorneys' fees and costs under the Consumer Fraud Act at N.J.S.A.56:8-19, the TCCWNA at N.J.S.A. 56:12-17, and all other applicable statutes;

m.  For pre-judgment and post-judgment interest; and

n.  For such other and further relief as Plaintiff and others similarly situated may be entitled or as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the Complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Andrew R. Wolf, Esq. and David C. Ricci, Esq., are hereby designated as trial counsel for the Plaintiff in the above matter.

## CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in the action at this time.

**The Dann Law Firm, P.C.**

Dated: June 10, 2023                      *s/Andrew R. Wolf*
                                          Andrew R. Wolf


**Law Office of David C. Ricci, LLC**

Dated: June 10, 2023                      *s/David C. Ricci*
                                          David C. Ricci

                                          *Attorneys for Plaintiff and others similarly situated*

# Exhibit A

Dealer Number N/A     Contract Number N/A

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| CAROL A LASSITER-WILLIAMS<br>329 LENOX AVENUE<br>SOUTH ORANGE, NJ 07079<br>N/A | N/A<br>N/A<br>N/A | HUDSON KIA<br>36 Water St<br>Jersey City, NJ 07305 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2014 | KIA SORENTO | 5XYKW4A77EG471512 | Personal, family, or household unless otherwise indicated below<br>☐ business   N/A<br>☐ agricultural   ☐ _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $3,000.00 is |
|---|---|---|---|---|
| 12.00 % | $12,620.12 | $29,129.38 | $41,749.50 | $44,749.50 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | 556.66 | Monthly beginning 08/15/17 |
| N/A | N/A | N/A |

Or As Follows:

N/A

**Late Charge.** If payment is not received in full within **10** days after it is due, you will pay a late charge of **5** % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ **10,000** or less, the charge for each late payment will be $ **10** .

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including $ 1,959.38 sales tax)     $26,959.38 (1)

2 Total Downpayment =

   Trade-In N/A
     (Year)   (Make)     (Model)

   Gross Trade-In Allowance     $ N/A
   Less Pay Off Made By Seller     $ N/A
   Equals Net Trade In     $ N/A
   + Cash     $ 3,000.00
   + Other _____     $ N/A
   (If total downpayment is negative, enter "0" and see 4J below)     $ 3,000.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2)     $23,959.38 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts:)

   A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
     Life     $ N/A
     Disability     $ N/A

   B Other Optional Insurance Paid to Insurance Company or Companies     $ N/A

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. **THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability:   ☐ Buyer   ☐ Co-Buyer   ☐ Both

Premium:
  Credit Life $ N/A
  Credit Disability $ N/A
Insurance Company Name N/A
Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the amount financed if you die. This insurance pays the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. See the policies or certificates for coverage limits and other terms and conditions. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ _____ N/A _____ N/A
   Type of Insurance     Term

Premium $ N/A
Insurance Company Name N/A

Equals Net Trade In

+ Cash ............................................................................. $  3,000.00

+ Other _____ $    N/A

(If total downpayment is negative, enter "0" and see 4J below) ...... $  3,000.00  (2)

3  Unpaid Balance of Cash Price (1 minus 2) .................................... $ 23,959.38  (3)

4  Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A  Cost of Optional Credit Insurance Paid to Insurance
Company or Companies.

Life                    $        N/A

Disability              $        N/A            $      N/A

B  Other Optional Insurance Paid to Insurance Company or Companies  $      N/A

C  Official Fees Paid to Government Agencies

to ____N/A____ for _____N/A_____          $      N/A

to ____N/A____ for _____N/A_____          $      N/A

to ____N/A____ for _____N/A_____          $      N/A

D  Optional Gap Contract .......................................... $  1,000.00

E  Supplemental Title Fee ........................................ $      N/A

F  Vehicle Tire Fee ............................................... $      N/A

G  Government Taxes Not Included in Cash Price ............... $      N/A

H  Government License and/or Registration Fees

.................................................................... $    111.00

I  Government Certificate of Title Fees

.................................................................... $     60.00

J  Other Charges (Seller must identify who is paid and
describe purpose)

to ____N/A____ for Prior Credit or Lease Balance  $      N/A

to HUDSON KIA   for DOC FEE              $    499.00

to ALLSTATE     for SERVICE CONTRACT    $  3,500.00

to ____N/A____ for _____N/A_____      $      N/A

to ____N/A____ for _____N/A_____      $      N/A

to ____N/A____ for _____N/A_____      $      N/A

to ____N/A____ for _____N/A_____      $      N/A

to ____N/A____ for _____N/A_____      $      N/A

to ____N/A____ for _____N/A_____      $      N/A

Total Other Charges and Amounts Paid to Others on Your Behalf $  5,170.00  (4)

5  Amount Financed (3 + 4) ........................................ $ 29,129.38  (5)

---

**Other Optional Insurance**

☐  ____N/A____                    N/A
   Type of Insurance              Term

Premium $            N/A

Insurance Company Name    N/A
                          N/A
Home Office Address    N/A
                       N/A

☐  ____N/A____                    N/A
   Type of Insurance              Term

Premium $            N/A

Insurance Company Name    N/A

Home Office Address    N/A
                       N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X ____N/A____                    N/A
Buyer Signature                  Date

X ____N/A____                    N/A
Co-Buyer Signature               Date

**Returned Check Charge:** You agree to pay a charge of $ ____20____ if any check you give us is dishonored and the law allows it.

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before ____N/A____, Yea N/A. SELLER'S INITIALS ____N/A____

---

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.

If a payment is not received in full within ____N/A____ days after it is due, you will pay a late charge of $ ____N/A____ or ____N/A____ % of the part of the payment that is late, whichever is less.

If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ____75____ Mos.               Allstate
                                   Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

---

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____   Co-Buyer Signs X ____N/A____

| describe purpose) | | for Prior Credit or Lease Balance | $ | N/A | |
|---|---|---|---|---|---|
| to | N/A | for Prior Credit or Lease Balance | $ | N/A | |
| to | HUDSON KIA | for | DOC FEE | $ | 499.00 |
| to | ALLSTATE | for | SERVICE CONTRACT | $ | 3,500.00 |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf $ 3,170.00 (4)

5  Amount Financed (3 + 4) $ 29,129.38 (5)

I want the insurance checked above.

X _____   N/A _____
Buyer Signature                      Date

X _____   _____
Co-Buyer Signature                   Date

**Returned Check Charge:** You agree to pay a charge of $ 20 if any check you give us is dishonored and the law allows it.

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____ N/A _____ , Year N/A . SELLER'S INITIALS N/A

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within ___ N/A ___ days after it is due, you will pay a late charge of $ ___ N/A ___ or ___ N/A ___ % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ___ 75 ___ Mos.                          Allstate
                                               Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

### NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____   Co-Buyer Signs X ___ N/A ___
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See back for other important agreements.**

### NOTICE TO RETAIL BUYER

**Do not sign this contract in blank.**
**You are entitled to a copy of the contract at the time you sign.**
**Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _____   Date __07/01/__   Co-Buyer Signs X ___ N/A ___   Date N/A
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X ___ N/A ___   Address _____   N/A
Seller Signs ___ HUDSON KIA ___   Date __07/01/1__   By X _____   Title ___

Seller assigns its interest in this contract to ___ ALLY FINANCIAL ___ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse      ☒ Assigned without recourse      ☐ Assigned with limited recourse

Seller ___ HUDSON KIA ___   By _____   Title ___

**ILAW**  FORM NO. 553-NJ (REV. 4/14) Patent No. D460,782
©2014 The Reynolds and Reynolds Company  TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-820-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER/TRUTH IN LENDING COPY

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may cause the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. If the vehicle is primarily for personal, family, or household use and the cash price is $10,000 or less, the maximum attorney's fee will pay will be $100 plus 10% of the excess over $500 of the amount due when we hire the attorney.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**Unless the Seller makes a written warranty, or enters**

covering loss of or damage to the vehicle for the term. in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.** **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund on insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3.  IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a.**  You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

is a total loss because it is confiscated, damaged, or stolen, we may subtract the refund from what you owe. We may also subtract from what you owe rebates and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.  WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5.  Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6.  Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7.  Applicable Law**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-NJ 4/14

# Exhibit B

PIP MEMBER #

**NGT** 670712

CUSTOMER
REGISTRATION NO.

# ResistAll ● NG2®
### CUSTOMER REGISTRATION FORM

Month 7  Day 1  Year 2017

DEALER NAME  Hudson Kia

Dealer Code:

DEALER ADDRESS  36 Water Street Jersey City NJ 073

CUSTOMER NAME  Cassiter-Williams Carol
Last Name                              First Name          Initial

CUSTOMER ADDRESS  redacted
redacted              South Orange NJ 07079
                                   City           State   Zip Code

CUSTOMER PHONE
                    Area Code   Day Phone         Area Code   Night Phone

VEHICLE INFORMATION  Kia  2014  Sedan Exterior  71687151
                     Make  Year   Model   Serial Number   Mileage

CUSTOMER E-MAIL

$8310.00
PRODUCT COST

## APPEARANCE PROTECTION TERMS
### SELECT ONE

# ResistAll ● NG2®

## APPEARANCE PACKAGE INCLUDES:

**PAINT PROTECTION**

**FABRIC PROTECTION**

**LEATHER / VINYL PROTECTION**

**RENEWABLE FOR LIFE**

☐ 1 Year

☐ 2 Years

☐ 3 Years

☑ 4 Years

☐ 5 Years

☐ 6 Years

☐ 7 Years

The Dealer who provides you with this Customer Registration Form ("Registration") will complete this form. The Dealer will then return the original of this Registration to Cal-Tex Protective Coatings, Inc. ("Cal-Tex"), at the address shown below. Cal-Tex reserves the right to reject this Registration without obligation to any party if the proper fees are not submitted to Cal-Tex by the Dealer within sixty (60) days of the date of the application of the product to Your Vehicle. Please call Cal-Tex at the toll-free number listed below if you have any questions regarding this Registration or Your Limited Warranty. **THE PURCHASE OF THIS PRODUCT IS NOT REQUIRED AS A CONDITION TO OBTAIN FINANCING ON YOUR VEHICLE.**

### CUSTOMER SIGNATURE

The above selection indicates the term of the Limited Warranties for which I am applying. I have read this Registration and the Limited Warranties, and I understand and agree to all their terms and conditions.

CUSTOMER'S SIGNATURE                              DATE  7/1/17

AUTHORIZED DEALER SIGNATURE                       DATE  7/1/17

CAL-TEX PROTECTIVE COATINGS, INC. ● 7455 NATURAL BRIDGE CAVERNS RD ● SCHERTZ, TX 78154 ● 800.707.9292 ● www.ctpc.com
WHITE - CAL-TEX ● YELLOW - DEALER ● PINK - CUSTOMER
©2016 CAL-TEX PROTECTIVE COATINGS, INC.

160605 NGT

LIMITED WARRANTY

160605 NGT

1. **SCOPE OF THIS LIMITED WARRANTY:** Cal-Tex Protective Coatings, Inc. ("CalTex") warrants that where the ResistAll® product is properly and professionally applied to Your Treated Surfaces, should the ResistAll® product fail to perform as specified herein, CalTex will pay to remedy the damaged portion of the Treated Surfaces of Your Vehicle as provided in this Limited Warranty ("Warranty"). CalTex will also pay to You a Rental Car Reimbursement of up to Fifty dollars ($50) per day for a maximum of seven (7) days for exterior repainting; or a maximum of five (5) days for interior treatment or replacement. This Warranty is **RENEWABLE FOR LIFE** according to the terms and conditions described below.

   **PAINT:** The interior Treated Surfaces, including spoilers, bumpers, trim areas, hinges, headlight lenses, and side-view mirrors, are warranted for the Term indicated on the Registration associated with this Warranty against weather-induced fading or loss of gloss, oxidation, hard water etching, water spotting on chrome, industrial fallout, bird droppings, insects (including love bugs), tree sap, road salt, de-icing agents such as liquid or dry magnesium and/or calcium chloride, sand abrasion, acid rain, brake dust staining on chrome or aluminum alloy wheels, and accidental paint overspray. (Note: the following exterior Treated Surfaces are limited to the remedy of cleaning to the extent reasonably possible, the combined cleaning costs for all such Treated Surfaces not to exceed a $250.00 aggregate during its Term: (1) water spotting on chrome, (2) fading or dulling of headlight lenses, and (3) brake dust staining on chrome or aluminum alloy wheels).

   **FABRIC OR VINYL/LEATHER:** The interior Treated Surfaces, including original factory floor mats and original factory-installed trunk and/or cargo area carpet, are warranted during its Term against ultraviolet-induced fading, loose seam stitching; or permanent staining on the interior, including pigmented plastic door trim and consoles, additional vinyl/leather protection against weather-induced or ultraviolet-induced weakening or cracking of the vinyl/leather surfaces resulting in punctures less than ¼ inch in diameter or rips or tears less than one inch. The interior Treated surfaces are also warranted against odor caused by food or mildew as a result of food and/or drink. Treatment for odor is limited to cleaning the vehicle and retreating.

2. **REMEDY FOR FAILURE OF THE PRODUCT: NEW / NEW LEASED VEHICLES:** CalTex will, at its sole discretion, clean, dye, polish, detail, restore, replace or repaint the damaged portion of the Treated Surfaces, and only the damaged portion of the Treated Surfaces, to the extent possible, at no charge to You. **USED / USED LEASED VEHICLES:** CalTex will, at its sole discretion, clean, dye, polish or detail the damaged portion of the Treated Surfaces, and only the damaged portion of the Treated Surfaces, to the extent possible, at no charge to You. **ALL VEHICLES:** At no time shall the warranty claim payment for repair of the damaged portion of the Treated Surfaces exceed the current value of the Vehicle, as determined by the National Automobile Dealers Association ("N.A.D.A.") Official Used Car Guide average trade-in value, at the time that the warranty claim payment is made under this Warranty. It is at the full discretion of CalTex to implement and determine the repair. When repairing, replacing or repainting the interior or exterior of any Treated Surface, it may not always be possible to exactly match the color and/or texture of the undamaged Treated Surfaces. These discrepancies are not covered, and CalTex is not responsible for such instances. CalTex reserves the right to inspect any damaged portion of the Treated Surfaces prior to authorizing any remedy.

3. **EXCEPTIONS TO THIS WARRANTY: THIS WARRANTY DOES NOT APPLY TO:** Fleet vehicles and damage from natural causes, normal wear and tear, pre-existing conditions, or damage caused by pets (other than blood, vomit and urine.) Odors caused by anything other than mold or mildew from food or drink, including and without limitation, odors related to the operation of the vehicle, or any gasses emitted from the interior components of the vehicle. Acts of abuse, vandalism, alterations, intentional acts, misuse, negligence, acts which would cause abnormal discoloration or deterioration, fire, flood, wind, lightning, hail, acids, harsh or corrosive chemicals, stone abrasion, paint chipping, peeling, crazing, spotting or separating; exhaust system, decals and/or graphic designs, mechanical or moving parts, truck beds, inside panels, railings, inside tailgates, headliners, steering wheels, seat belts, aftermarket floor mats, aftermarket trunk and/or cargo area carpet, suede surfaces, any damage caused by impact or collision, scratches, dings, dents, Vehicle manufacturer defects and/or damages covered in the Vehicle manufacturer's warranty.

4. **LIMITATIONS ON CALTEX LIABILITY:** CALTEX'S MAXIMUM LIABILITY FOR THE RESISTALL® PRODUCT AND THIS WARRANTY IS LIMITED TO THE AMOUNTS CALCULATED PURSUANT TO THE TERMS OF THIS WARRANTY. CALTEX SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES. IF CALTEX DOES NOT RECEIVE FROM THE DEALER THE REGISTRATION FEES FOR THIS WARRANTY TO BECOME EFFECTIVE, CALTEX SHALL HAVE NO LIABILITY TO YOU OR THE DEALER. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND CALLS FOR CERTAIN REQUIREMENTS. YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, DO NOT ALLOW CERTAIN REQUIREMENTS, OR DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE LIMITATIONS, REQUIREMENTS OR EXCLUSIONS MAY NOT APPLY TO YOU.

5. **REQUIREMENT FOR THIS WARRANTY TO BECOME EFFECTIVE:** CalTex's receipt from the Dealer of the correct registration fees within sixty (60) days of the date of the application of the ResistAll® product to Your Vehicle.

6. **YOUR RESPONSIBILITIES:**
   A) You must regularly inspect Your Vehicle and maintain Your Vehicle as recommended by the manufacturer.
   B) Upon noticing a stain or damage to Your interior or exterior Treated Surfaces, contact CalTex immediately, but in no event later than thirty (30) days.

7. **CLAIMS PROCEDURE:** Contact CalTex at 1.800.707.9292 or www.ctpc.com with any questions regarding Your claim. You may be asked to provide information regarding the damage, a copy of Your Warranty, Registration or proof of purchase of product, and/or Your identification. **For a warranty claim to be considered, the claim must be filed during the Term indicated on the Registration associated with this Warranty.**

8. **DISPUTE RESOLUTION CLAUSE:** Any controversy or claim arising out of or relating to this warranty, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its arbitration rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitrator(s) shall award to the prevailing party, if any, as determined by the arbitrators, all of their costs and fees. "Costs and fees" mean all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorneys' fees. The award of the arbitrators shall be accompanied by a reasoned opinion. Both CalTex and You agree that this dispute resolution clause shall be a complete defense in any suit, action, or proceeding instituted in any federal, state or local court with respect to any controversy or dispute arising out of this Warranty.

9. **DEFINITIONS:**
   **You** and **Your** shall refer to the CalTex customer who signs and is listed on the Registration associated with this Warranty.
   **Vehicle** shall refer to the automobile, truck, or van listed on the Registration associated with this Warranty (recreational vehicles and mobile homes are excluded).
   **New/New Leased Vehicle** shall refer to a vehicle no more than four (4) model years old with unlimited mileage, at the time of ResistAll® product application (or reapplication, in the case of transfer). Model year is defined as current year less four years. (For example, if a vehicle is purchased in 2016, deduct four years. In this instance, a new car would be model year 2012 through 2016).
   **Used/Used Leased Vehicle** shall refer to a vehicle more than four (4) model years old.
   **Term** shall refer to the period of time that this Warranty shall be in effect from the date You purchased the ResistAll® product until the expiration of the Term as indicated by You on the Registration.
   **Rental Car Reimbursement** shall refer to rental car expense that You must directly pay out-of-pocket.
   **Dealer** shall refer to the provider of the ResistAll® product listed on the Registration. The Dealer must be a CalTex authorized provider of the ResistAll® product ("CalTex Dealer").
   **Industrial Fallout** shall refer to tiny metallic particles that become airborne and settle on vehicle surfaces, which then embed themselves into the paintwork (also known as "rail dust").
   **Hard Water Etching** shall refer to mineral and water deposits that have collected on the Treated Surfaces of the Vehicle and that You are unable to remove.
   **Sand Abrasion** shall refer to dulling or fading due to windblown sand particles forced against and moving along the vehicle's painted surface.

10. **OTHER PROVISIONS:**
    **CANCELLATION OF WARRANTY: This Warranty is non-cancellable.**
    **RENEWABLE OPTION:** This Warranty is renewable in three (3) year increments for as long as You own the Vehicle ("Renewal Period"), after the expiration of the Term and any Renewal Period, subject to CalTex's written approval, if within thirty (30) days prior to the expiration of the Term and any Renewal Period, You pay a CalTex Dealer for a reapplication of ResistAll® product at the then prevailing price. Contact CalTex at the address or phone number below for Renewal Period registration procedures and nearest CalTex Dealer.
    **TRANSFER OPTION:** This Warranty is transferable, during its Term, by You to a second owner of Your Vehicle subject to CalTex's written approval, providing the second owner notifies CalTex of the request of transfer within thirty (30) days of the date of sale. Contact CalTex for fees and transfer procedures. There are no transfer fees if You are an active member of the U.S. Military.
    **COMPUTATION OF TIME:** All time periods stated in this Warranty shall be computed by beginning the count on the day of the specified event.
    **NOTICE TO CONSUMER:** This Warranty is insured by Virginia Surety Company, Inc. under a contractual liability insurance policy. This Warranty is a product warranty and is not insurance.
    **ENTIRE AGREEMENT:** THIS WARRANTY REPRESENTS THE ENTIRE AGREEMENT BETWEEN CALTEX AND YOU, AND CANNOT BE MODIFIED OR ENLARGED IN ANY WAY EXCEPT IN WRITING BY CALTEX. THE ONLY INDIVIDUALS AUTHORIZED TO BIND AND SPEAK FOR CALTEX ARE THOSE LOCATED AT THE ADDRESS BELOW. THIS WARRANTY IS A PRODUCT WARRANTY THAT PROVIDES FOR THE PRODUCT INSTALLED OR APPLIED TO YOUR VEHICLE. THE CALTEX DEALER IS NOT AUTHORIZED TO EXTEND OR IN ANY MANNER MODIFY THE TERMS AND CONDITIONS OF THIS WARRANTY, OR RECEIVE DOCUMENTS, CORRESPONDENCE, OR NOTICES, ON BEHALF OF CALTEX.

CONTACT CALTEX AT: 7455 NATURAL BRIDGE CAVERNS RD. SCHERTZ, TX 78154-3210 • 1-800-707-9292 • ©2016 CALTEX PROTECTIVE COATINGS, INC. • www.ctpc.com

# Civil Case Information Statement

### Case Details: ESSEX | Civil Part Docket# L-003727-23

**Case Caption:** LASSITER-WILLIAMS CAROL  VS CAL-TEX
PROTECTIVE C

**Case Initiation Date:** 06/12/2023

**Attorney Name:** DAVID C RICCI

**Firm Name:** DAVID C. RICCI, LLC

**Address:** 51 JFK PARKWAY FIRST FL WEST

SHORT HILLS NJ 07078

**Phone:** 9732182627

**Name of Party:** PLAINTIFF : Lassiter-Williams, Carol

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** YES

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Carol Lassiter-Williams? NO**

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**
This is a putative class action. Plaintiff requests the case be assigned to Track 4 to allow for total case
handling by the assigned judge.

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>06/12/2023</u>
Dated

<u>/s/ DAVID C RICCI</u>
Signed

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK          NJ 07102

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 776-9300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   JUNE 12, 2023
                    RE:     LASSITER-WILLIAMS CAROL  VS CAL-TEX PROTECTIVE C
                    DOCKET: ESX L -003727 23

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE MANAGING JUDGE ASSIGNED IS:  HON KEITH E. LYNOTT

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (973) 776-9300 EXT 57184.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.
                    ATTENTION:
                              ATT: DAVID C. RICCI
                              DAVID C. RICCI, LLC
                              51 JFK PARKWAY
                              FIRST FL WEST
                              SHORT HILLS     NJ 07078


ECOURTS

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
BY:  Mark J. Leavy, Esquire                    **ATTORNEY FOR DEFENDANT**
**Attorney ID:  014312004**                    **Cal-Tex Protective Coatings, Inc.**
**535 Route 38 East**
**Suite 501**
**Cherry Hill, NJ  08002**
**(856) 663-4300**

**0447-113490(MJL/SSN)**

| | |
|---|---|
| Carol Lassiter-Williams, on behalf of herself and all others similarly situated, | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY** |
| Plaintiffs, | **CIVIL ACTION NO.** |
| vs. | |
| Cal-Tex Protective Coatings, Inc., and John Does 1-10, | |
| Defendants. | |

# NOTICE OF REMOVAL

# EXHIBIT B

Andrew R. Wolf, Esq. – NJ Attorney ID No. 018621995
The Dann Law Firm, P.C.
1520 U.S. Hwy. 130, Suite 101
North Brunswick, NJ 08920
(732) 545-7900/ fax: (732) 545-1030

David C. Ricci, Esq., NJ Attorney ID No. 037622011
Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, NJ 07078
(973) 218-2627/ fax: (973) 206-6955

*Attorneys for Plaintiff and the Putative Class*

| | |
|---|---|
| CAROL LASSITER-WILLIAMS, on behalf of herself and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY ESSEX COUNTY: LAW DIVISION |
| Plaintiff, | CIVIL ACTION |
| vs. | |
| CAL-TEX PROTECTIVE COATINGS, INC., and John Does 1-10 | DOCKET NO. ESX-L-3727-23 |
| Defendants. | **ACKNOWLEDGMENT OF SERVICE** |

I, Daniel McDonald, consent to accept service of the **SUMMONS,**

**COMPLAINT, TRACK ASSIGNMENT, CASE INFORMATION STATEMENT,** on behalf

of the Defendant Cal-Tex Protective Coatings, Inc. via email with a service date of June 23,

2023. I certify that that I am fully authorized to accept service of process on behalf of the

Defendant.

**Cal-Tex Protective Coatings, Inc.**

By: _____

　　Daniel McDonald, Esq.

　　~~Corporate~~ Counsel, Defendant
　　General

Date: ___6/23/2023___, 2023

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
BY:  Mark J. Leavy, Esquire
Attorney ID:  014312004
535 Route 38 East
Suite 501
Cherry Hill, NJ  08002
(856) 663-4300

**ATTORNEY FOR DEFENDANT**
**Cal-Tex Protective Coatings, Inc.**

0447-113490(MJL/SSN)

Carol Lassiter-Williams, on behalf of herself and
all others similarly situated,

                   Plaintiffs,

    vs.

Cal-Tex Protective Coatings, Inc.,
and John Does 1-10,

                Defendants.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CIVIL ACTION NO.**

# NOTICE OF REMOVAL

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Carol-Lassiter Williams
on behalf of herself and *Plaintiff*
*v.*  others similarly situated,

Cal-Tex Protective Coatings Inc.

*Defendant*

Civil Action No. _____

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1(a)(1), a disclosure statement is required to be filed by any non-government corporate party, including those seeking to intervene.

The undersigned counsel certifies that  Cal-Tex Protective Coatings, Inc._____,
is a non-governmental corporation and that:

☑  This party's parent corporation, and all publicly held corporations owning 10% or more of this party's stock, are listed here:

Cal-Tex Protective Coatings, Inc., a Texas Corporation, is owned 100% by
_____
Spectrum Automotive Holdings Corp.
_____
_____

## OR

☐  This party does not have a parent corporation, nor is there any publicly held corporation that owns 10% or more of this party's stock.

MARK J. LEAVY

_____
Signature of Attorney

535 Route 38 East, #501
_____
Address

Cherry Hill, NJ 08002
_____
City/State/Zip

July 24, 2023
_____
Date

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
BY:  Mark J. Leavy, Esquire                    **ATTORNEY FOR DEFENDANT**
**Attorney ID:  014312004**                    **Cal-Tex Protective Coatings, Inc.**
**535 Route 38 East**
**Suite 501**
**Cherry Hill, NJ  08002**
**(856) 663-4300**

**0447-113490(MJL/SSN)**

Carol Lassiter-Williams, on behalf of herself and          **UNITED STATES DISTRICT COURT**
all others similarly situated,                                          **DISTRICT OF NEW JERSEY**

                              Plaintiffs,                                   **CIVIL ACTION NO.**

              vs.

Cal-Tex Protective Coatings, Inc.,
and John Does 1-10,

                              Defendants.

# NOTICE OF REMOVAL

# EXHIBIT D

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
BY:  Mark J. Leavy, Esquire
Attorney ID:  014312004
535 Route 38 East
Suite 501
Cherry Hill, NJ  08002
(856) 663-4300

**ATTORNEY FOR DEFENDANT**
**Cal-Tex Protective Coatings, Inc.**

0447-113490(MJL/SSN)

| | |
|---|---|
| Carol Lassiter-Williams, on behalf of herself and all others similarly situated, | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY** |
| Plaintiffs, | **CIVIL ACTION NO.** |
| vs. | |
| Cal-Tex Protective Coatings, Inc., and John Does 1-10, | |
| Defendants. | |

## DECLARATION OF DANNY MCDONALD

Pursuant to 28 U.S.C.§ 1746, I declare under penalty of perjury that the foregoing is true and correct:

1.      I am the General Counsel of Cal-Tex Protective Coatings, Inc. ("Cal-Tex") and I have firsthand knowledge of, and am fully familiar with, the subject matter hereinbelow.

2.      Consistent with the Rule 7.1 Corporate Disclosure being filed together with the Notice of Removal in this matter, Cal-Tex is a Texas corporation that maintains its primary business address at 7455 Natural Bridge Caverns Road, Schertz, Texas, 78154, and Cal-Tex is wholly owned by Spectrum Automotive Holdings Corp., a Delaware corporation.

{M0612798.1}

3.     On June 12, 2023, Plaintiffs commenced a civil action in the Superior Court of New Jersey, Essex County, Law Division, Docket No. ESX-L-3727-23, by filing a complaint entitled "Class Action Complaint and Jury Demand" (hereinafter the "Class Action Complaint"). *See* Exhibit A to the Notice of Removal.

4.     On June 23, 2023, I accepted service of the Class Action Complaint. See Exhibit B to the Notice of Removal.

5.     In the Class Action Complaint, Plaintiff, Carol Lassiter-Williams ("Plaintiff") alleged, in relevant part and at all times relevant:

- Cal-Tex sold or offered to sell motor vehicle service contracts in the State of New Jersey through its network of motor vehicle dealers located in New Jersey. (*See* Class Action Complaint, at ¶ 11);
- Cal-Tex sold motor vehicle service contracts through 36 Water Street Auto, LLC, d/b/a Hudson Kia ("Hudson Kia") (*See* Class Action Complaint, Exhibit A, at ¶12);
- On July 1, 2017, the Plaintiff purchased a used 2014 Kia Sorento SX, VIN 5XYKW4A77EG471512, (hereinafter, the "Sorento") from Hudson Kia. (*See* Class Action Complaint, at ¶13);
- at the time of the purchase of the Sorento, the Plaintiff also purchased a ResistAll NG2 Contract (hereinafter, ResistAll) for $3,105.00, which Cal-Tex sold through Hudson Kia. (*See* Class Action Complaint, at ¶15);
- the ResistAll contract allows Cal-Tex to "reserve the right to reject this Registration without obligation to any party if the proper [registration fees] are not submitted to Cal-Tex by the Dealer within sixty (60) days of the date of the application of the product to Your Vehicle." (*See* Class Action Complaint, at ¶16);
- Hudson Kia timely remitted the "proper fees" to Cal-Tex and that Cal-Tex did not reject the ResistAll contract and the coverage promised under the contract became active. (*See* Class Action Complaint, at ¶¶ 17-18);
- Cal-Tex sells other coverages besides the ResistAll contract through its New Jersey dealer network that satisfy the definition of a "Service Contract" and/or a "motor Vehicle Ancillary Protection Product" as defined by the CSCA at N.J.S.A. 56:12-87. (*See* Class Action Complaint, at ¶ 19);
- the sellers of the ResistAll contracts and/or other Cal-Tex Service Contracts to others similarly situated remitted the "proper fees" to Cal-Tex and that Cal-Tex did not reject the ResistAll contracts and/or other Cal-Tex Service Contracts of others similarly situated, and the coverages promised under their contracts became active. (*See* Class Action Complaint, at ¶¶ 20-21);

- the ResistAll contracts and/or other Cal-Tex Service Contracts are form contracts that the Defendant used in their transactions with the Plaintiff and others similarly situated. (*See* Class Action Complaint, at ¶ 22);

- the ResistAll contracts and/or the other Cal-Tex Service Contracts provide for one or more of the following with respect to a motor vehicle: the repair or replacement of tires or wheels on a motor vehicle that was damaged, the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal, and the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired. (*See* Class Action Complaint, at ¶24(1), (2), and (3));

- Cal-Tex did not reject the ResistAll contracts and/or the other Cal-Text Service Contracts, and that the coverages promised under these contracts for the Plaintiff and others similarly situated became active (*See* Class Action Complaint, at ¶¶ 25-26);

- Plaintiff and others similarly situated purchased their Resistall contracts and Cal-Tex Service Contracts to provide protections for the vehicles they purchased and that the vehicles purchased by the Plaintiff and others similarly situated exceed $250.00. (*See* Class Action Complaint, Exhibit A, at ¶¶ 27-28);

- that the motor vehicle dealers and other sellers in New Jersey who sold the ResistAll contracts and/or other Cal-Tex Service contracts to others similarly situated submitted the correct registration fees to Cal-Tex within 60 days of the registration dates set forth in their contracts. (*See* Class Action Complaint, at ¶29);

- that the ResistAll contract and other contracts that the Defendant used in its transactions with the Plaintiff and others similarly situated are described as "limited warranties," but are in fact "service contracts" because they are contracts obligating a third-party to perform services at an additional cost for the motor vehicles sold or leased. (*See* Class Action Complaint, , at ¶47);

- that when she got home with the Sorento, Plaintiff discovered that she paid $3,105.00 for the ResistAll contract, far more than she was willing to pay or believed she was being charged. (*See* Class Action Complaint, at ¶48);

- that she returned to Hudson Kia on July 2, 2017, seeking to cancel the ResistAll contract but was informed that the ResistAll contract was not cancelable and that Hudson Kia refused to cancel the contract. (*See* Class Action Complaint, at ¶¶49-50);

- on July 2, 2017, she called Cal-Tex directly requesting to cancel the ResistAll contract for a refund but was informed by Cal-Tex representatives that the Resist-All contract was not cancelable, and that Cal-Tex would not cancel and refund the Plaintiff's purchase price. (*See* Class Action Complaint, at ¶51-52);

- that Cal-Tex routinely refuses to refund the purchase prices paid by others similarly situated to Plaintiff who attempt to cancel their ResistAll contracts and/or other Cal-Tex Service Contracts for a refund. (*See* Class Action Complaint, at ¶53);

- that Plaintiff, and others similarly situated, wanted to cancel their ResistAll contracts and/or other Cal-Tex Service Contracts and receive refunds of the purchase price, but were deterred by the contract's cancellation provision that made the contract "non-cancelable." (*See* Class Action Complaint, at ¶56);

- that had Cal-Tex disclosed the cancellation provisions required by the CSCA, Plaintiff and others similarly situated would have discovered that they had the right to cancel their contracts and obtain a refund of the purchase price, and Plaintiff and others similarly situated would have been able to make an informed decision about whether they wished to cancel or would have canceled their contracts under the CSCA's provisions. (*See* Class Action Complaint, at ¶ 57-60);

- that Cal-Tex is the only person or entity who is contractually obligated to the service contract holder under the terms of the ResistAll contract and/or other Cal-Tex Service Contracts sold to the Plaintiff and others similarly situated and that Plaintiff and others similarly situated are the service contract holders for the ResistAll contract sold to them. (*See* Class Action Complaint, at ¶¶ 61-62).

*See* Notice of Removal at ¶¶11-33.

6.    The Class Action Complaint further alleges that the provisions of the ResistAll contract and similar such contracts which Cal-Tex entered into with Plaintiff and others similarly situated violated the New Jersey Consumer Fraud Act ("CFA"), <u>N.J.S.A.</u> 56:8-1, *et. seq.*, the Consumer Service Contract Act ("CSCA"), under <u>N.J.S.A.</u> 56:12-87 to -96, and the Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"). *See* Notice of Removal at ¶¶35-41.

7.    Plaintiff alleges that every such contract entered into by Cal-Tex with Plaintiff and others similarly situated violated TCCWNA, which provides for statutory damages of no less than $100.00, plus actual damages, attorneys' fees, and costs. *See* Notice of Removal at ¶¶43, 44.

8.    Plaintiff alleges that every such contract entered into by Cal-Tex with Plaintiff and others similarly situated was at least in the amount of $250.00 and caused Plaintiff and others similarly situated an ascertainable loss of at least $250.00, and that under the CFA and CSCA, Plaintiff and other similarly situated are each statutorily entitled to treble damages of this amount, plus attorneys' fees, and costs. *See* Notice of Removal at ¶¶37, 42, 44.

9.    Based on these allegations, and with at least $850 of damages claimed for Plaintiff and each member of the putative class, if there were approximately 5,883 class members, this would exceed $5,000,000 in damages, exclusive of attorneys' fees, costs, and interest, according to the allegations in the Class Action Complaint

10.    According to the allegations in the Class Action Complaint, the putative class would include all natural persons who are residents of New Jersey on the date that Plaintiff filed this Class Action Complaint, and/or other natural persons who entered into a contract or agreement incident to the purchase or lease of a motor vehicle for personal, family, or household purposes, from a licensed motor vehicle dealer located in New Jersey at any time on or after the date six (6) years prior to the date this Class Action Complaint was filed under which Cal-Tex was contractually obligated to the contract holder that was the same as or similar to the contract used in Plaintiff's transaction.

11.    I have reviewed Cal-Tex's business records, and during the above time referenced frame, there is in excess of at least 15,000 individuals who entered into the type of ResistAll and other contracts alleged in the Class Action Complaint who would comprise the putative class; and accordingly, this would yield at least $12,750,000 in potential damages in this matter, exclusive of attorneys' fees, costs and interest.

**SIGNATURE OF DECLARANT**
**DANNY MCDONALD**

7/21/2023
**DATE**